FRANCIS RAHM v. KING WROUGHT-IRON BRIDGE MAN- UFACTORY OF TOPEKA.

1. MANAGING OFFICERS OF CORPORATION; *No Power to Bind Corpora- tion to Pay Debts of Another Person.* The vice president and secre- tary of a manufacturing corporation, although the active managers of the business of the corporation, superintending the erection of its buildings, making its contracts, and signing its drafts, checks and notes, have not by virtue thereof authority to bind the corporation by a promise to pay the debts of another and distinct corporation.

2. ———— Where one corporation buys a portion of the assets of an- other corporation, and in consideration thereof agrees to assume and pay certain specific debts of the latter, those creditors whose debts are thus assumed can maintain their actions directly against the for- mer, but the other creditors cannot, even though a portion of the indebtedness thus assumed is fictitious.

3. NEGOTIABLE PAPER; *Indorsement—Maturity; Pleading; Issue; De- fense.* Where the indorsement of a note is in blank, and without date, and the allegation of the petition that it was indorsed before due is denied in the answer, and there is no evidence as to the date of the indorsement, any defense good against the payer must also be held good against the indorser and holder.

*Error from Shawnee District Court.*

ACTION by *Rahm* as plaintiff on two promissory notes, one for $4,915.57, the other for $5,561.57. The notes were dated "Nov. 9th 1872," payable at four and five months respect- ively. The petition alleged that they were indorsed to plain- tiff before maturity. The defendant, the *Bridge Manufactory of Topeka,* answered, *first,* a general denial; *second,* special denials, that it ever executed the notes sued on; that it ever

authorized or empowered T. B. Mills and B. M. Smith, or either of them, to execute and deliver said notes; that said Mills and Smith or either of them ever had authority from it to execute and deliver said notes; that said notes were in good faith indorsed to the plaintiff for a valuable consideration — and alleging, that said notes were executed and delivered without any consideration therefor to defendant, which fact was well known to plaintiff at and before the time of the alleged transfer of the said notes to him; *third,* an averment that said notes were executed and delivered by said Mills and Smith (whose names are signed thereto) to Coleman, Rahm & Co., in settlement of a debt due to the said Coleman, Rahm & Co., from the "King Wrought-Iron Bridge Manufactory and Iron Works of *Iola;*" that the defendant in errror was in no manner liable for the payment of said debt, nor did the payment or settlement of the same in any manner pertain to the business of the defendant; that at the time of the execution and delivery of said notes plaintiff was a member of the firm of Coleman, Rahm & Co., and had full knowledge of all the facts herein stated at and before the time of the alleged transfer of said notes to him. The second defense was verified by affidavit. The reply of plaintiff was a general denial. Trial at the June Term 1874, and judgment for the defendant. The plaintiff brings the case here on error. The material facts are stated in the opinion.

*Thacher & Stephens,* for plaintiff:

1. We claim that by the by-laws of defendant company, which defendant introduced in evidence, the vice-president had power to execute the notes. They provide that the president shall "execute all contracts, deeds, certificates of stock, and other instruments of writing necessary for the transaction of the business of the company when properly authorized so to do by the board of directors, as hereinafter provided;" and that in the absence of the president the vice-president shall perform his duties; also, that the secretary shall countersign instruments in writing when signed in ac-

cordance with said by-laws. The note in this case is attested by the secretary, which is an official declaration by the company that the power if required had been conferred. Said by-laws also provide for an executive committee whose business it shall be to have advisory supervision of the business of the company, and who shall have all the authority of the board of directors in cases of emergency requiring immediate action, and which cannot await the time necessarily elapsing before a regular or called meeting of the board. We submit that in these provisions alone is ample power to make the notes in suit. As to what are cases of emergency, the by-laws do not provide, and therefore the matter is left to be determined by the executive committee.

That there is a further provision for the ratification of their action by the board of directors, is immaterial, for the attestation of the secretary is an affirmation that all these acts have been complied with; and the plaintiff being a purchaser in good faith, the defendants should not now be heard to deny it. 14 Wallace, 283. Defendant's by-laws also provide that "the treasurer shall pay all checks, drafts or orders presented to him for payment when properly executed by the president or vice-president and countersigned by the secretary." And this company held out to the world by their acquiescence in the acts of Mills, that he was authorized to do these acts. They allowed him to transact the whole business of the corporation as general manager. In fact, he and Smith were nearly the whole operators of the concern. Mills, the vice-president and acting president, signed checks, drafts, and promissory notes to various parties.

There is another view which we wish to present to the court: It appears by the testimony of both Mills and Smith that the Iola company had large assets. That Mills and Smith were the managers of that company, and that the assets of that company, except its realty and including the good will of trade, were carried to the Topeka company. That in consideration of such transfer the Topeka company assumed a large amount of real indebtedness, and about

$50,000 of fictitious indebtedness. This fictitious indebtedness went to Ennis, Adams, &c., who now object to the payment of the honest debt of the Iola company, the avails of which passed to the Topeka company, for if it did not all pass in iron, it must have passed in other assets. Now in equity the firm of Coleman, Rahm & Co. could pursue these assets. *Booth v. Bruce*, 32 N. Y. 139. Mills and Smith so far were the principal parties interested. They knew where the assets of the Iola company had gone, and the equities of Coleman, Rahm & Co.

They gave the notes of the new company now in suit, and the Adams draft, and Coleman, Rahm & Co. discharged the debt of the Iola company, which company was in fact merged in the Topeka company. The whole matter was one transaction. The Topeka company paid the draft, thus ratifying the transaction and sanctioning the act of Mills, and the company are now estopped from denying it. (Story on Agency, § 242; 22 N. Y. 264; 19 N. Y. 218.)

2. The court erred in admitting the books of the defendant to be read in evidence as offered by defendant. They were incompetent, and hearsay testimony only. (18 Wall. 541.) By admitting the books to be read, the court asserted that they were competent and proper evidence to be considered, and there is a high degree of probability that they were accepted by the court as conclusive evidence upon the question in controversy. Code, § 387.

*Alfred Ennis*, and *C. M. Foster*, for defendant:

The notes sued on do not of themselves purport to be the notes of the defendant. These notes are not of themselves evidence of indebtedness owing by defendant. They do not of themselves contain a promise to pay by defendant, nor do they purport to be signed by the defendant. The plaintiff claims that the notes were *intended* to be the notes of the defendant. This fact was attempted to be shown by extrinsic evidence. Defendant insists that if the notes do not purport to be the obligations of defendant, and are not of themselves

such obligations, then they cannot be made such by extrinsic facts. (6 Kas. 27.) It is an uncontroverted fact, that the notes were written upon *letter paper*, which letter paper had a printed heading; and that the words "King Iron-Bridge Manufactory and Iron Works," at the top of the notes, is such printed letter-head, and nothing more. Hence the same is no part of the notes.

The evidence shows that the defendant is a private manufacturing corporation, organized for the sole purpose of manufacturing bridges; that the notes were signed and delivered for a debt of the Iola Bridge Company, for the payment of which debt the defendant was in no manner liable, nor did the settlement or payment of such debt in any manner pertain to the business of the defendant; that defendant received no consideration for the notes sued on; that Rahm, the plaintiff, a member of the firm of "Coleman, Rahm & Co.," was present at the time the notes were signed and delivered, and had full knowledge of all the facts; and that the defendant in error had no knowledge of the existence of the notes sued on at the time of the payment of the draft of $4,924.48.

A private corporation can make no valid or binding contract except such as relates to the business and objects of the corporation. Gen. Stat. 187, § 26; 33 Ind. 185; 21 Howard, 441; 13 N. Y. 309; 22 N. Y. 258; 13 Peters, 519. The assuming of a debt owing by a third party is not in the usual course of business, nor within the ordinary powers of a private corporation. 34 Vt. 144; 43 Geo. 187.

Officers of a private corporation are special and not general agents of the corporation, and consequently have no power to bind the corporation except within the limits prescribed by its charter and the by-laws; and persons dealing with such officers are charged with notice of the authority conferred upon them, and of the limitations and restrictions upon the powers of such officers by the charter and by-laws. 52 Barb. 399; 22 Wis. 194; 38 Cal. 590; 6 Blatch. 139: 2 Sweeney, (N. Y.) 415; 40 How. Pr. Rep. 340; 15 How. Pr. Rep. 428; 20 N. Y. 312.

19—16 KAS.

The opinion of the court was delivered by

BREWER, J.: Plaintiff in error, plaintiff below, brought his action upon two promissory notes. The case was tried by the district court without a jury. No special findings of fact were made, but only a general finding for defendant.

But a single question really is presented, and that is, whether upon the testimony the plaintiff was entitled to a judgment. For, while counsel speak of error in the admission of certain books of the defendant, yet, as not a line out of the books was read in evidence, and no reference made to them after their admission, it seems hardly necessary to inquire whether the court ruled correctly in admitting them. Upon the facts then, was the plaintiff entitled to judgment? And the question, it must be remembered, is, not whether upon the testimony a judgment in favor of the plaintiff could be sustained, but whether upon that testimony the judgment must have been for him. In other words, cannot the finding in favor of the defendant be sustained? Turning to the record, these things appear: One note was as follows—and the other was in form similar:

*King Iron-Bridge Manufactory and Iron Works,*

$4,915.57.                TOPEKA, Nov. 9th, 1872.

Four months after date, we promise to pay to the order of A. J. Baker, forty-nine hundred and fifteen and 57-100 dollars, for value received, without defalcation.

B. M. SMITH, *Sec'y K. B. Co.*        T. B. MILLS, *V. P.*

Indorsed: "A. J. Baker," "Coleman, Rahm & Co."

The president of the company during the fall of 1872 was Zenas King, who was absent from the state. Messrs. Mills and Smith were respectively vice-president and secretary, and apparently the active managers of the affairs of the corporation, superintending the construction of the buildings, making contracts, signing notes, drafts and checks. The "Iola Bridge Company," a corporation located and doing business in Iola, had been engaged in the same business as the Topeka Bridge Company (defendant herein) was purposing to engage in,

Statement of facts. and for which buildings were being erected and other preparations made. The debt for which these notes were given was a debt due from the Iola Bridge Co. to Coleman, Rahm & Co. for iron. T. B. Mills, the vice-president of the Topeka Bridge Co., was president of the Iola company. The Topeka Bridge Co. bought of the Iola company all its assets, except the real estate, and in consideration thereof assumed the payment of certain specific indebtedness. These notes were not a part of the indebtedness thus assumed, although the draft hereinafter referred to was. These notes were taken by Mr. Rahm, of Coleman, Rahm & Co., who was at Topeka to settle the claim against the Iola company, and he took these notes in payment. They were drawn to the order of A. J. Baker, to enable him to indorse them, as at his instance in the first place the debt was created. Whether "Francis Rahm," the plaintiff, is the "Mr. Rahm" of Coleman, Rahm & Co., does not appear. Neither was there any evidence to show when the notes were indorsed to plaintiff. The indebtedness of the Iola company to Coleman, Rahm & Co. was nearly $5,000 in excess of the amount of these notes. For this amount, at the same time, a ninety-day draft was drawn on Daniel M. Adams, who at that time had no official connection with the defendant, but who some sixty days thereafter, and before the maturity of the draft, became its vice-president and treasurer. Adams paid the draft, and was credited with the amount in his settlement with the company as its treasurer. There was nothing upon the face of the draft to show on whose account it was drawn. It was signed "T. B. Mills, President," and directed to "Daniel M. Adams, Topeka, Kansas." Mr. Mills was, as we have seen, president of the Iola company. He testified in his deposition that it was drawn by him as vice-president of the Topeka company. There was testimony tending to show that some $45,000 of the indebtedness of the Iola company assumed by the Topeka company was fictitious, and running to the officers of the Topeka company. No express authority from the board of directors to Messrs. Mills and Smith to execute

these notes was shown, and no formal ratification of the act. The testimony is conflicting as to whether any knowledge of the transaction was communicated to or possessed by the directors or any of them until the presentation of the first note for payment.

This comprises, we think, all the material portions of the testimony; and upon this we remark, in support of the ruling of the district court, that Messrs. Mills and Smith had no authority from the company to bind it to the payment of the debts of another and different corporation. Even if it were conceded that they had all the powers of general managers, still those powers did not extend to the assumption of another company's debts. Though they might bind the corporation to any debt within the scope of its ordinary business, yet beyond that they were powerless. Again, while under the contract between the Iola company and the Topeka company by which the latter purchased a part of the assets of the former under an agreement to pay therefor certain of its debts, those creditors whose debts were thus assumed might maintain an action against the Topeka company directly, yet none of the other creditors of the Iola company could. And it matters not that a portion of the indebtedness that the Topka company assumed to pay was fictitious. Whatever effect that might have upon the validity of the sale, as against the creditors of the Iola company, or upon garnishee proceedings instituted by such creditors, yet it does not give the right to such creditors to jump over the Iola company and institute an action directly against the Topeka company. And thirdly, as there is no evidence of the time of the indorsements, or that they were made before the maturity of the notes, and this fact is put in issue by the pleadings, the exact facts in reference to the giving of the notes may be shown in evidence, and are as competent for a defense to an action by this plaintiff as to one by the payee. It seems scarcely necessary to enlarge upon these propositions. They are sufficient to support the judgment.

*1. Powers of managing officers of corporations.*

*2. Assumption of debts. Creditors.*

*3. Transfer of note—before, and after maturity.*

We do not wish to be understood as saying that there was no testimony upon which, if uncontradicted, or unqualified, a judgment in favor of the plaintiff could have been supported; but we do hold, that upon the facts as above stated there is enough to uphold the judgment for the defendant, and it must be affirmed.

All the Justices concurring.